FILED

SEP 10 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

Harjinder Gill and
Jasvir Gill,

          Debtors.

Case No. 12-18909-B-7

DC No. TOG-15

**MEMORANDUM DECISION REGARDING MOTION FOR
APPROVAL OF COMPENSATION**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. B.A.P. R. 8013-1.

Thomas O. Gillis, Esq., appeared on behalf of the debtors, Harjinder and Jasvir Gill.

Lisa Holder, Esq., of Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, appeared on behalf of the chapter 7 trustee, Peter L. Fear.

Robin Tubesing, Esq., appeared on behalf of the Acting United States Trustee, August B. Landis, Esq.

    Before the court is a motion filed by the debtors' attorney Thomas O. Gillis, Esq. ("Gillis") requesting compensation for legal services and reimbursement of expenses incurred during the debtors' chapter 11[1] case before it was converted to chapter 7 (the "Fee Motion"). In response, the United States Trustee (the "UST") objects to a

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

substantial number of billing entries for a variety of deficiencies. The chapter 7 trustee does not object to the amount of fees requested, but he requests clarification regarding the priority of payment. The court took the matter under submission after allowing the parties an opportunity to file supplemental briefs. For the reasons set forth below, the requested compensation will be allowed in part as a chapter 11 administration expense; the expense reimbursement will be allowed in whole.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 330, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

Harjinder and Jasvir Gill (the "Debtors") filed a chapter 11 petition on October 22, 2012. The case was converted to chapter 7 on the UST's motion on May 23, 2013. The Debtors were represented by Gillis before and during their case, but his application for employment was not submitted to the court until December 3, 2012, nearly six weeks after the petition was filed.[2] The application was approved on February 15, 2013.

Throughout the chapter 11, the Debtors' case was plagued with issues, some of which appeared to be the result of difficulties in Gillis's ability to advise and represent his clients.[3] The meeting of creditors had to be continued three times. Multiple monthly operating reports had to be amended at the request of the UST. The Debtors did not close their prepetition bank accounts as required after the petition date, and they also paid professionals without court authorization.

---

[2] Gillis filed his original employment application on November 16, 2012, but that was withdrawn after the UST objected to its approval based on a number of issues.

[3] Indeed, one of the UST's objections to Gillis's original employment application was a history of being unable to confirm plans in chapter 11 cases.

On March 7, 2013, the UST moved to dismiss the case on a number of grounds, including alleged continuing loss to the estate, the absence of a reasonable likelihood of rehabilitation, the failure to timely and properly file monthly operating reports, and gross mismanagement of the estate. The Debtors opposed the dismissal motion. The motion was supported by Teresa Aquino ("Aquino"), the Debtors' primary secured creditor who holds a lien against the Debtors' business, a mini-mart gas station (the "Mini Mart"). There was no dispute that the Mini Mart was worth substantially more than the debt to Aquino. The bankruptcy estate appears to be administratively solvent and able to pay all of its claims in full from liquidation of the Mini Mart.

At the hearing on April 25, 2013, the court ordered that the Debtors have a loan in progress to refinance Aquino's secured claim by the continued date of the hearing; otherwise, the case would be converted to chapter 7. The Debtors were unable to meet the refinance deadline and the case was converted on May 23, 2013.

Roughly a week after the conversion, Gillis filed the Fee Motion. He requests compensation for legal services in the amount of $38,445 and reimbursement of expenses in the amount of $105.94 for the period beginning on October 22, 2012 and ending on May 29, 2013. The requested compensation is comprised of Gillis's time (85.3 hours billed at $375 an hour), as well as his paralegal's time (36.9 hours billed at $175 an hour). Gillis seeks payment from his retainer, of which $30,954 remained, and then from the Debtors "as funds [become] available."

The Debtors consented to the allowed and payment of Gillis's fees and expenses. Indeed, since this appears to be a "surplus" estate, the Debtors will be the ultimate payor of all administrative expenses; those expenses will reduce the amount of funds returned to the Debtors after the creditors are paid. However, the Fee Motion drew objections from both the UST and the chapter 7 trustee. The UST objects to Gillis's fees as being unreasonable based primarily on his handling of the chapter 11 case. The UST requests that Gillis be allowed only $5,000 for his work in the case. The chapter 7 trustee raises a limited objection, that Gillis's fees should be paid as a chapter 11 administrative expense

in accordance with the priority scheme under § 507 (i.e., paid only after the chapter 7 administrative expenses claims are paid). The trustee also requests an order compelling Gillis to turn over his retainer as property of the estate.

In response, Gillis argues generally the difficulties of the case. He also asserts an attorney's lien against the retainer in opposition to the chapter 7 trustee's turnover request. On July 3, 2013, the court heard oral argument from the parties and gave the UST and Gillis an opportunity to file supplemental briefs, after which the matter would be deemed submitted. The UST timely filed his supplemental brief. Gillis elected not to do so.

**Applicable Law.**

Even when the debtor does not object to the payment of attorney's fees requested by its counsel, bankruptcy court has the independent duty to review the fees of the debtor's attorney as well on other professionals in the interest of protecting the integrity of the bankruptcy system. *See In re Montgomery Drilling Co.*, 121 B.R. 32, 35-36 (Bankr. E.D. Cal. 1990). Section 330 of the Bankruptcy Code governs compensation to professionals. It provides, in pertinent part, that the court may award "reasonable compensation for actual, necessary services rendered" by such professionals. § 330(a)(1).

<u>Lodestar Method.</u> In the Ninth Circuit, the customary method for determining the award of reasonable attorney's fees is by the "lodestar" method. *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 598 (9th Cir. 2006). Under this method, "'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A compensation award based on the loadstar method is a presumptively reasonable fee. *In re Manoa Fin. Co., Inc.*, 853 F.2d 687, 691 (9th Cir. 1988). However, use of the "lodestar" method though is not mandatory. *See Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir. 1991) (concluding that bankruptcy court's use of alternative formula rather than lodestar method was not abuse of discretion).

4

<u>Prudent Billing Judgment.</u>  Whenever the court must determine the reasonableness of the hours expended by a fee applicant, a universal consideration in the court's analysis is whether the applicant exercised reasonable or prudent billing judgment. *See Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 109 (9th Cir. BAP 2000) ("Professionals always must exercise proper billing judgment."); *Lobel & Opera v. U.S. Tr. (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (9th Cir. BAP 1997) ("Professionals have an obligation to exercise billing judgment."); *see also Puget Sound Plywood*, 924 F.2d at 958–59 (noting that a bankruptcy professional had an "obligation to exercise billing judgment" and did not have "free reign to run up a tab" without considering several factors).  Unless the applicant exercised prudent billing judgment, then the presumption of reasonableness which might flow from the lodestar method does not apply to any of the requested fees. *In re Parreira*, 464 B.R. 410, 417 (Bankr. E.D. Cal. 2012).

On this "billing judgment" issue, the Supreme Court has commented,

> [A court] . . . should exclude from [the] initial fee calculation hours that were not "reasonably expended."  Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel [who is requesting fees] should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  In the private sector, "billing judgment" is an important component in fee setting.  It is no less important here.

*Hensley*, 461 U.S. at 434 (citations omitted) (internal quotation marks omitted) (Civil Rights Attorney's Fees Awards Act context). Thus, "[i]t does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis added).

"The [applicant] applying for fees bears the burden of proving the reasonableness of those fees." *Dalessio v. Pauchon (In re Dalessio)*, 74 B.R. 721, 724 (9th Cir. BAP 1987) (§ 506(b) context).  It is not sufficient for the applicant to simply represent that all of the time claimed was usefully spent, and the court should not uncritically accept these representations. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987).

Instead, the applicant must show that the time spent was reasonably necessary and that it made a good faith effort to exclude excessive, redundant, or unnecessary hours. *Id.* Unless the fee application on its fact shows that the applicant exercised prudent billing judgment, the court is not required to accept the actual hours expended as being reasonable.

Detailed Fee Applications. The process of determining the reasonableness of fees necessarily begins with the fee application itself. Rule 2016 provides, "An entity seeking interim or final compensation for services . . . from the estate shall file an application setting forth a *detailed* statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a) (emphasis added). "These detailed applications establish the 'actual,' while an accompanying narrative explanation of the 'how' and 'why' establish the 'necessary.'" *In re Wildman*, 72 B.R 700, 707 (Bankr. N.D. Ill. 1987). "[D]etailed fee applications enable the bankruptcy court to fulfill its obligations to examine carefully the requested compensation in order to ensure that the claimed [fees and] expenses are justified." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985).

Adjustments to Compensation Requested. On a motion by a party in interest or on its own sua sponte motion, the court may "award compensation that is less than the amount of compensation that is requested." § 330(a)(2). If reducing fees, the court must "provide a concise but clear explanation of its reason for the fee award," *Hensley*, 461 U.S. at 437, and must also "articulate with sufficient clarity the manner in which it makes its determination." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). However, this does not require the court to include detailed calculations in its explanations, but "something more than a bald, unsupported amount is necessary." *Id.* at 1211 n.3.

With these legal principles in mind, the court turns to Gillis's Fee Motion and the objections raised by the UST.

///

6

**Analysis and Conclusions of Law.**

<u>Duplicate Entries.</u>  The UST first objects to a set of billing entries in which Gillis and his paralegal both billed for the same amount of time to perform the same task. Together, these entries totaled 24.3 hours for each person at a cost of $13,365, with Gillis billing $9,112.50 (at a rate of $375 an hour) and his paralegal billing $4,252.50 (at a rate of $175 an hour). The court agrees with the UST that these billing entries are highly suspect, rather than being merely coincidental, and they call into question the reasonableness and necessity of the fees requested.

First, the frequency of these duplicative billing entries is relatively high. Of the 52 billing entries in which Gillis and his paralegal billed for the same task, they both billed the same amount of time in 34 of the 52 entries. This suggests, for these 34 entries, that either Gillis or his paralegal did not keep contemporaneous billing records and when later having to input the entries, simply copied what the other had already recorded. Alternatively, the pattern suggests that either Gillis or his paralegal may have artificially constructed the bill by copying the other's billing entries. Nevertheless, either situation would be inappropriate.

Second, for many of these billing entries, it is unclear how two people could be working on the same task or why two people were needed for the same task. The most significant example of this is the set of 12 billing entries where both Gillis and his paralegal billed for the presumptively straightforward task of preparing emails. Why was it necessary for two people to prepare the same email? And how did two people prepare the same email? Even if Gillis could offer some reasonable response to those questions, there still remains the lingering question of how this task could be performed by two people in the same amount of time?

Lastly, Gillis has not provided any explanation for these duplicative billing entries. Although neither the court nor the UST can exactly pinpoint what had happened with regards to the entries, the suspect nature of the entries themselves, as described above, nevertheless warrants the denial of fees. As previously mentioned, Gillis bears the

burden when seeking court approval of his fees. *Hensley*, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). Yet, Gillis declined to file a supplemental brief in response to the UST's, so the court has nothing to explain these billing entries.

For these reasons, the court is inclined to disallow Gillis's fees ($9,112.50) where both he and his paralegal billed for performing the same task. Without any explanation from Gillis regarding the duplicative billing entries, Gillis has not adequately shown that they were reasonable and necessary. As the Bankruptcy Appellate Panel has noted, "[A] court should only award fees to the level that has been proven to be actual, necessary and reasonable. Any less requirement would make the applicant's burden of proof a mere shell." *Roderick v. Levy (In re Roderick Timber Co.)*, 185 B.R. 601, 608 (9th Cir. BAP 1995) (emphasis omitted) (citation omitted) (internal quotation marks omitted). Because Gillis has not met his burden for this set of billing entries, the fees requested will be reduced by $9,112.50.

<u>Administrative Tasks.</u> Gillis's billing records include another set of billing entries, for which the UST contends that Gillis performed merely administrative tasks. An attorney can only be compensated under § 330 for performing legal services, "as opposed to administrative or otherwise nonlegal services." *Puget Sound Plywood*, 924 F.2d at 958. An attorney who bills for the performance of administrative tasks shows a lack of prudent billing judgment.

Here, the UST has identified 30 entries in which Gillis "reviewed and calendared" non-substantive items on the docket, billing between one-tenth and four-tenths of an hour for each item. Specifically, Gillis had billed an unreasonable amount of time for "reviewing" straightforward notices and documents, such as the requests for special notice (0.7 hours), the clerk's notices of the meeting of creditors (0.2 hours) and of the status conference (0.1 hours), the UST's reports of the meeting of creditors (0.4 hours) and statement of non-appointment of a creditors' committee (0.2 hours), and the court's

civil minutes and civil minute orders (3 hours). When aggregated, the 30 billing entries amounted to 4.6 hours of Gillis's time and $1,725 in his fees.

The time billed for reviewing these documents is simply inappropriate. Not only were the entries for administrative tasks, but they were performed by an attorney, rather than by a paralegal or legal assistant. None of these items reviewed by Gillis were substantive enough to warrant anything more than a cursory review by an attorney. The suggestion that it actually took 0.1 hours (6 minutes) for an attorney, billing $375 per hour, to "review" a form notice or a short civil minute order is unbelievable.

The court is not saying here that the attorney in charge of a case should not read and be aware of the civil minute orders, notices, and reports issued by the court and the UST, but these are not complicated documents. For example, the time required to "review" the UST's statement of non-appointment of a creditors' committee should not exceed, perhaps, one minute. Here, Gillis billed 12 minutes for that task. Because Gillis should not have billed for administrative tasks, Gillis's fees will be reduced by $1,725.

Billing for Unauthorized Services. Next, the court raises an issue with Gillis billing for unauthorized services. The general rule is that "professionals who perform services for a debtor in possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by a court order." *Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 973 (9th Cir. 1995).

Here, Gillis requests compensation for services rendered to the Debtors as early as October 15, 2012. Yet, Gillis's employment application was not filed until December 3, 2012 (around six weeks after the petition date), and the order approving his employment did not approve his employment nunc pro tunc.[4] As a result, the court had only authorized Gillis's services rendered as of December 3, 2012, and any fees requested for

---

[4] The court notes that the Fee Motion states that Gillis's employment was made effective October 10, 2012. Gillis's employment application requested that the court approve his employment effective October 26, 2012. However, the order approving his employment did not mention any effective date, neither did it include any language suggesting nunc pro tunc approval.

9

services prior to that date would be improper.

However, bankruptcy courts possess the equitable power to retroactively approve a professional's valuable but unauthorized services, *id.*, and this court has typically allowed, without a further showing by the professional, the fees requested for unauthorized services as long as those services were performed within the 30-day period prior to the filing of the professional's employment application. Otherwise, the professional is required to establish extraordinary circumstances, which in the Ninth Circuit means "(1) satisfactorily explain[ing] [his or her] failure to receive prior judicial approval; and (2) demonstrat[ing] that [his or her] services benefitted the bankrupt estate in a significant manner." *Id.* at 974. Because Gillis has not made this showing in either his employment application or his Fee Motion, the court cannot allow any fees requested for services performed before November 3, 2012 (i.e., the date 30 days before the filing date of Gillis's employment application). Therefore, the court disregards the 13 billing entries dated from October 15, 2012 to October 28, 2012, and Gillis's fees will be reduced by $2,010.[5]

<u>Miscellaneous Issues.</u> Lastly, the court considers a variety of questionable billing entries identified either by the UST or the court:

On December 27, 2012, Gillis billed half an hour for briefing the Debtors prior to their continued § 341 meeting of creditors and then billed another hour for attending that meeting. However, while a meeting was originally scheduled for that day, the UST ultimately excused Gillis and the Debtors from appearing due to one of the Debtor's serious medical condition. *See* Report of Second Continued 341 Meeting (ECF No. 56). Since no meeting took place, it appears that Gillis improperly billed a full hour attending a meeting that did not happen. For this impropriety, Gillis's fees will be reduced by $375.

---

[5] Three of the 13 billing entries were previously disallowed since they were for duplicative services by Gillis and his paralegal. Another three entries were also disallowed because they were for administrative tasks. So that Gillis would not be penalized twice for the same billing entry, the court only took into account the remaining seven billing entries, which totaled $2,010.

Gillis has included two entries for performing the same task, namely, attending the hearing on the motion for relief from the automatic stay on April 25, 2013. The first entry bills half an hour, but the second entry bills a full hour. Since the second entry is duplicative, Gillis's fees will be reduced by $375.

On May 24, 2013, Gillis billed three hours for working with Larry Bopp, a loan broker, for the Debtors to obtain a hard money loan. However, at a hearing on the prior day, the court had already ordered that the Debtors' case be converted to chapter 7 (though the actual order was not filed until May 24). The Bankruptcy Code expressly provides that "the court shall not allow compensation for . . . services that were not . . . reasonably likely to benefit the debtor's estate; or . . . necessary to the administration of the case." § 330(a)(4)(A)(ii)(I)–(II). Due to the conversion of the Debtors' case, Gillis's attempt to obtain a hard money loan was neither reasonably likely to benefit the bankruptcy estate nor necessary to the case's administration at that point. Thus, Gillis's fees will be reduced by $1,125.

**Conclusion.**

Based on the foregoing, the court finds and concludes that it is not appropriate to award Gillis the full amount of compensation requested in his Fee Motion. The requested fees ($38,445) will be reduced by the amount of $14,722.50. Therefore, the court will allow $23,722.50 in fees, which may be paid from Gillis's retainer, subject to disgorgement if this estate is ultimately determined to be administratively insolvent. Additionally, the court will allow reimbursement of the requested expenses in the amount of $105.94, also payable from the retainer. The balance of Gillis's retainer shall be turned over to the chapter 7 trustee.

Dated: September __10__, 2013

W. Richard Lee
United States Bankruptcy Judge

## Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Lisa Holder, Esq.
Attorney at Law
4550 California Ave., 2nd Floor
Bakersfield, CA 93309

Robin Tubesing, Esq.
Attorney a Law
Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721